Good morning, Your Honors. Patrick Ford on behalf of the appellant, Michael Hansen. Your Honors, the issue we're going to address today is the prosecutor's repeated misstatements during summation, misstatements regarding the law, and an important issue. But before I get to it, I would like to just briefly renew my request to expand the appeal to include the incredible issue of the statement that my client made to the homicide detective on the night that he was arrested, the homicide detective, who also was his Mormon priest, and the manipulation of my client's very strongly held religious beliefs. That case was avoided certification, and we just ask that it be included in the appeal and that the Attorney General be asked to submit briefing on the issue. Now, back to the certified issue of the prosecutor's misstatement, it's our position certainly that the state court acted unreasonably in ruling that there was no misconduct, and that if there was, that it was cured by the subsequent instruction by the court. A couple of points that I'd like to highlight are that the case, the sole defense in the case was self-defense, or perhaps more importantly, an unreasonable self-defense. Interestingly, the pattern instructions on the law, it was kind of a complicated area of the law. The parties with the trial judge taking the laboring or spent a long time researching the law and trying to come up with precisely, they researched the case law and found the law that applied. And the fourth point that I'd like to highlight is the prosecutor's kind of unusual announcement that she had essentially intended to do something controversial, which we consider to be misconduct during her closing argument, and she wanted to be insulated from defense attacks following that misconduct during summation. I think the first point is, hopefully, is easily dismissed, and that's whether there was misconduct at all. The state court essentially ruled on the issue that each side that, each side was entitled to argue the law that favored its position. And it's, this was not a case where there was law favoring each side's position. This was a case where there was only one law that applied, and the prosecutor during summation repeatedly stood that law on its head. And again, this was pre-planned. It's our position that the better question is whether or not the instruction that the court later gave. Kennedy. Well, I don't know. I mean, even that is somewhat debatable. And what she says, you can't find imperfect self-defense on these facts, if you look at the two instructions. I mean, you could just as well, or you could plausibly read what she said as being an argument on the facts, not an argument on the law. Because, you know, after all, the judge instructs on the law, and the lawyers then sort of say, well, you know, you can't find this here. You know, there's no way you can find this here. You know, it's impossible to find it here. And lawyers tend to carry it away. So I think it's at least, it's not as clear-cut. In my mind, there was no misconduct at all. But then the trial court bopped her hard and emphasized to the jury that she was wrong on that point. Okay. If I can just address that point, Your Honor, I think what's important to note is that the prosecutor kind of short-circuited the analysis and told the jury that if you find — there was no question that he was the original aggressor in this situation, simply by virtue of the fact that he was trespassing in the victim's garage. And what she told the jury to do five times was, if you find that he was the original aggressor, then the instructions on self-defense simply don't apply. Essentially, don't read them. You don't need to bother yourselves with these complicated and boring instructions. If you find he was the original aggressor, they could not make any other finding. Part of the defense acknowledged that he was the original aggressor, but that he regained the right to claim self-defense. And so to the extent that what she did short-circuited the analysis entirely and took the jury's — the tough part of the decision-making away from them. You know, the judge says this, you know, lawyers argue, you know, the lawyer's argument is not evidence. The lawyers don't give you the law. I give you the law. I mean, this is all past tense and stuff. I mean, you know, since the trial court did find that she made a misstatement, I'm not going to debate it. You know, I don't think there's any point debating it too hard, although I think, you know, it could have been done a different way. But the trial court went ahead and gave a curative instruction. I don't know what else to say. And we would concede fully that in most cases the curative instruction would fix the problem. Was the curative instruction right? The curative instruction was insufficient in this case. And the court — it was insufficient. That's not what I had asked. It was technically right and it didn't go — it wasn't nearly hard enough. The trial court said essentially — So it was a correct statement of the law, the curative instruction. Right. And moreover — and this is a question you can answer. Moreover, my understanding is that it fixed the problem in the sense that it told the jury exactly where — it covered all of the things that the prosecutor said that were — The text accurately stated the law, which the prosecutor misstated. Right. It covered everything that she misstated. It said that — But there wasn't some part that she misstated that wasn't covered by the curative instruction. That's correct. Okay. And so your point is that the only thing the court could have done at that point is to take the case away from the jury and — No, no. By no means, Your Honor. We believe that a curative instruction — there could have been a better curative instruction. And I'd emphasize four points. First is that this was a very complicated area of the law. Second, that it went to the heart of the defense. Third, the trial court sent a message to any reviewing court when it specifically said, I don't think I can fix this. This was crucial. These were major points. In order to fix this, the court said, I think we need to use the sledgehammer approach. And the fourth point on this is the — if we look at the text of the misstatements themselves, whereas the prosecutor essentially told the jury, don't look at the instructions. If you find that it's the original — you know, you don't have to do the tough part. I think where this fell apart was — and perhaps there's never a situation in which the curative instruction can be found to be, you know, insufficient. If that's the case, that's the case. I don't believe that. And I believe here we have a perfect storm of facts where the curative instruction was insufficient. The judge said, I need to use the sledgehammer approach. You're not anywhere near a perfect storm. I mean, if you wanted something that's — you know, is a situation where the — you know, it's far worse, is where the prosecutor at summation references to evidence that was excluded, that the jury never heard, or, you know, blurts out information that was never introduced at trial, or has bearing on court defendants or on victims or things of that sort. Now, that's the kind of thing you might begin to say you can't cure with an instruction, because the prosecutor at that point has sort of let the cat out of the bag, and it's hard to unring the bell. But all the prosecutor did here is say — suggested to the jury that they misconstrued an instruction, and that court, I assume, had to sort of stand on the instruction where it says, you know, I tell you the law. What the lawyers tell you is not the law. You know, you've got to listen to me. I don't see how that is particularly egregious. Again, I would suggest that in this situation, the trial court was in the best position to determine the level of the remedy that would cure the problem. And what the trial court said was that we need to use a sledgehammer approach. What the court needed to do in this situation was not to bury the appropriate language of the law, which was a very complicated law, in the middle of some instructions which it said, I want to clarify some points, and it went on and went — this was complicated stuff that the lawyers didn't understand, that the judge didn't understand. The judge described these instructions, the law, as an absolute bear. It was complicated stuff. And I think that in light of the egregious nature of the — which the prosecutor had premedited this misconduct, I think what the court needed to do was either to invite counsel to make additional argument, or on the curative instruction itself, it could have said, ladies and gentlemen, we've got a major problem here. The prosecutor has misstated the law on very important points, and it's important for me to tell you that at this point, and we need to say what she said and then what that was wrong and what is the correct law before you go in there. That was the sledgehammer approach to the court. Kennedy, she's a bad person. She abandoned it. She should have said that, right? Fair enough, Your Honor. I leave the judgment to other people. But I would say that — No, no. I was saying the judge should have said that. She should have said that it was a misstatement. And we'd simply say, I'd like to reserve the rest of my time. But, I mean, the law constantly tells us that we need to hold prosecutors to a higher standard. And I think that to countenance, this kind of intentional misconduct, I think, would diminish that concept. And I'll reserve the rest of my time. You've reserved 28 seconds. Louis, the presiding judge will round it to 30. He's been known to be generous that way. Good morning. Good morning. Pamela Ratner on behalf of the California State Attorney General's Office and on behalf of the respondent, Gene Woodford. Judge Kaczynski will now tell you what's wrong with your case. All right. I would submit that the California State Courts acted consistently with the United States Supreme Court precedent and reasonably determined and applied the facts in this case, rejecting appellant's only certified issue, that the prosecutor's misstatement of law and closing on rebuttal denied him a fair trial. Although a prosecutor may not misstate the law, it is... I take your position on the uncertified issue is that we ought not to reach it. I'm sorry? I take it that your position on the uncertified issue is that we ought not to reach it. That's correct. Well, it's a little touchy, though, isn't it? Yes. Maybe we shouldn't talk about it since it wasn't certified. Well, we have to decide whether to certify it. Yeah. I mean, one could certainly read the record that what was going on here. I mean, this was his spiritual advisor, right? I don't believe so. No, I think there was some... He had a good friend. They were in the same church, and then he's personally familiar with him, and he has this two-hour conversation with him before the interrogation where he makes him feel the police are his friends. We all know that's a big lie. In the interest of fairness and pursuant to the circuit court rule, I would request an opportunity to brief that issue if the Court is inclined to consider it further. Okay. Let's get back to the issue. Returning to the certified issue, although a prosecutor may not misstate the law, it is not misconduct, of course, for a prosecutor to emphasize to the jury those instructions  And, in fact, the State court on appeal found that it was not misconduct for the prosecutor to rely on the standard instructions that were given by the trial court pertaining to imperfect self-defense and self-defense and argue that appellant had not... Certainly, if the judge had instructed the way the prosecutor told the jury to proceed, there would have been error, would it not? I mean, she said if you find he went there loath to forbear, I mean, in so many words, he can't take advantage of the imperfect self-defense instruction or self-defense at all. That's a correct statement of law. Well, it's not. He can disengage himself and, I mean, he can come there. He can be picking, looking for a fight. He might even start a fight, but California law says that he can disengage. He can say, wait a minute, I'm stopped fighting. I'm not going to fight you anymore. You're not my friend. I, you know, I, you know, and, you know, back off. And if the other guy keeps coming at him, even though he says, look, I'm quit fighting, and pulls out a gun, let's say, or pulls out a weapon, the defendant is entitled to take advantage of self-defense. So it is not the case, it is not true, as the prosecutor argued, that just showing up there loath to forbear would preclude self-defense or imperfect self-defense instruction or finding by the jury. Well, taken in isolation, but in considering the context of the prosecutor's argument, which particularly advanced the theory that this appellant was lying in wait for his victim. Yes, but you can lie in wait. I mean, that's the, you know, you can lie in wait. You can attack somebody. And I'm assuming you don't cause them harm. I mean, you know, once you cause them harm, you've caused a threshold. But let's say you come in and you lie in wait and you jump out and you start yelling at them and you engage in fisticuffs with them, but nobody's really hurt. And at that point you say, you know, I don't know what came over me. I'm sorry. I'm backing off. I just wanted to let you know I'm not fighting you anymore. I mean, it's perfectly clear in the California law that at that point you are back to being an ordinary person and if the other guy pulls a gun, you're entitled to kill him. I would submit that if you're lying in wait with the specific intent to kill or seriously injure, you've essentially set up the circumstances which deny you an opportunity to later claim self-defense. No matter what you do? No matter whether you lie in wait, he comes, and then you say I've had a revelation, I was wrong, I love you like a brother, we're going on a mission together? Well, under such circumstances pursuant to California law, I guess if enough time passes for you to completely communicate to your victim. There's no time requirement. You have to communicate it, but you can do that very quickly. You don't have to have a cooling off period. That's correct, but if you're holding a gun and, you know, you come upon someone and then later attempt to say that it was all a joke, I would submit that you've set up the circumstances which preclude you from denying, from relying on the defense of self-defense. And getting back to this argument by the prosecutor, again, the prosecutor was not instructing the jury. The jury received correct jury instructions, but was focusing on certain aspects of those instructions. I think it was her function to instruct the jury. She told the jury, you know, if you determine this, then you do that. She told them what she thought the law was. Well, in any event, even assuming that the prosecutor's statements caused confusion in the charge, here the trial court put together, as counsel has referenced, a major sledgehammer to ensure that this jury clearly understood that they, that an actual aggressor, there were circumstances in which an actual aggressor could rely on the defense of self-defense or imperfect self-defense. And so considering that fact, certainly appellant was not denied a fair trial by any misstatements, suggestion, even, you know, overt statements. Under federal law, of course, the culpability of the prosecutor is not at the crux of the analysis. Instead, it's a determination of whether an appellant has received a fair trial. And I would submit that this appellant received a fair trial. Short of, as was discussed, the court labeling it to the jury as the prosecutor made a mistake or whatever, this jury received an adequate charge. And I would also submit that in light of appellant's confession and multiple admissions, it is entirely unlikely that he could have relied on this defense successfully. But, again, the whole focus by this court is whether or not the jury, whether or not appellant received a fair trial, the jury was properly charged. We submit that the district court properly determined that the state courts reasonably applied federal law and properly assessed the facts. And on that basis, we would ask this court to affirm the district court's denial of relief. Thank you. We'll give you a minute. Oh, thank you, Your Honor. I don't think that I'll need very much time. There's just two points that I'd like to clarify. The first is that there was no confession but that the statements were made were incriminating statements showing my client's anger toward the victim, which were used to convict him, but they were by no means a confession. Secondly, I believe that the Attorney General misstated the nature of the instruction that was given. The trial court initially said what we need is the sledgehammer approach, but then she backed off that position later after finding that the misconduct, curiously finding that it was not intentional, and she used a more subtle approach. And we believe that it was the failure to use the sledgehammer that is the problem here. In just a couple of seconds, that's our position. The prosecution cheated. The trial court found that the misconduct involved major points in this case, and she didn't go far enough in fixing the problem. Thank you. One second. Okay. Mr. Ford, on page 36 of your brief, you attach a certificate, and you tell us how many words are contained in your brief. If you'll read Rule 32, you are also required to use a 14-point type. And for your information, a point is 172nd of an inch. Your brief is not 14-point type. I hope we don't see it again. Your Honor, I noticed that, and I apologize. I don't want a sanction or anything else. I just want to let you know. Okay. I did notice that, and I do apologize, Your Honor. Thank you, counsel. The case just argued will be submitted. The next case for oral argument is Bush v. Reynolds.
judges: Beezer, Reinhardt,kozinski